## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RAYZA MARTINEZ POMALES** | |
| Plaintiff | |
| **v.** | **CIVIL NO.** |
| **AVRO CORP.** | |
| Defendant | |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW,** The plaintiff, Rayza Martinez Pomales, respectfully requests a Permanent Injunction,[1] against Avro Corp., in accordance with Title III of the Americans with Disabilities Act.

## I.    PARTIES

1.  The Plaintiff Rayza Martinez Pomales is a resident of the Municipality of Caguas.

2.  The defendant, Avro Corp., is the owner, operator, lessor, and/or lessee of the public accommodation in dispute known as Bambina.

## II.    ALLEGATIONS

### A.  Regarding the Disability of Rayza Martinez Pomales

3.  Ms. Rayza Martínez is a person living with a progressive neuromuscular condition known as Spinal Muscular Atrophy Type 2, which severely affects her physical functioning, her mobility capacity, and her overall quality of life. This degenerative disease progressively compromises

---

[1] The plaintiff is not seeking a preliminary or temporary injunction. It is requested that the case proceed in the ordinary course.

skeletal musculature, causing muscle weakness, loss of strength, and atrophy, resulting in severe functional limitations that require specialized and ongoing clinical management.

4.  The spinal muscular atrophy Ms. Martínez suffers from affects multiple muscle groups, including those responsible for posture, locomotion, and balance. As a direct consequence of neuromuscular deterioration, her ability to move independently is severely limited. In particular, she has lost the strength necessary in her lower extremities to stand or walk, and she also experiences significant difficulties in moving even short distances without technological assistance.

5.  Due to the progression of her condition, Ms. Martínez is absolutely dependent on a motorized wheelchair for mobility. This device does not represent a convenience or an optional improvement to her quality of life, but rather an essential necessity that allows her to move, exercise basic autonomy, and participate in daily life. Her motorized wheelchair is her primary means of leaving her home, attending medical appointments, moving within public or private spaces, and carrying out such essential activities as shopping or attending family or community gatherings.

6.  Ms. Martínez's daily life is profoundly conditioned by the need for accessible physical environments. Every movement, every attempt to enter a building, every maneuver inside an establishment, or even the use of a public restroom depends on whether the facilities comply with universal accessibility standards. Architectural barriers do not represent for her a mere inconvenience, but insurmountable obstacles that exclude her, impede her free movement, and place her in a situation of structural discrimination on the basis of disability.

7.  Because of the progressive and irreversible nature of her condition, as well as her permanent functional dependence on a motorized wheelchair, Ms. Rayza Martínez is part of a particularly

vulnerable population in the face of structural inaccessibility. The failure to comply with minimum legal accessibility requirements in public and private establishments severely restricts her participation in social and community life, her access to goods and services, and her right to conduct herself with dignity and independence on equal terms with others.

**B.  Concerning the Properties in Question and the Court's Jurisdiction**

8.  The property in question is a public accommodation known as Bambina, located at 76 Tapia Street, Corner of Celis Aguilera, Caguas, PR 00725-0000, with geographical coordinates 18.236268405398295, -66.03604027925353.

    8.1.  The defendant, Avro Corp., is the owner of the place known as Bambina.

    8.2.  The defendant, Avro Corp., is the operator of the place known as Bambina.

    8.3.  The defendant, Avro Corp., is the lessee of the place known as Bambina.

    8.4.  The defendant, Avro Corp., is the lessor of the place known as Bambina.

**C.  The Discriminatory Experience of Rayza Martinez Pomales at Bambina Due to Her Disability**

9.  Mrs. Rayza Martínez, who resides just four minutes by vehicle from Bambina restaurant, has been an enthusiastic visitor of this establishment in the past, widely promoted on social media as "#1 in Puerto Rico and number 41 in Latin America." Motivated by its modern atmosphere, excellent service, and a gastronomic offering that includes everything from creative appetizers to pizzas recognized for their flavor, she visited on various occasions to enjoy the company of family and friends. Among her experiences, she highlights the quality of the cocktails, the variety of the menu, and dishes such as the stuffed jalapeños, as well as the Passione Picante, Carnal, and Bimba Picante pizzas, which contributed to her initially considering Bambina an ideal place to share and have a good time.

10. However, during her last visit, between December 2024 and January 2025, Mrs. Martínez was deterred from returning to the restaurant because, from her arrival, she noticed architectural barriers that prevented her from moving autonomously within the establishment and seriously compromised her access to the venue as a motorized wheelchair user. Despite having noted these conditions on previous occasions and having requested improvements from the staff, the deficiencies persisted, negatively impacting her experience and violating her right to accessibility. Her observations were confirmed through additional research conducted in July of this year, which ratified the existence of said barriers and evidenced that these constitute a significant obstacle to her safe, autonomous, and dignified access. These barriers not only hindered her mobility but also generated discomfort, dependency, and an unequal experience compared to other customers, which profoundly affected her assessment of the establishment. Despite this negative experience, Mrs. Martínez maintains her interest in visiting Bambina again within the next 5 months, with the expectation that the restaurant will adopt the necessary measures to guarantee a fully accessible environment, in accordance with current legal standards, which would allow her to resume her visits to the place under conditions of equity and safety. During her visit, she personally identified the following barriers:

    10.1. Inaccessible Entrance Doors with Step Barrier: When Mrs. Rayza visited the establishment, she encountered the black entrance doors which featured a step-level difference without ramps, making independent entry to the establishment extremely difficult. During her attempt to access the restaurant, she observed that there were two visible entrances available to enter the establishment, and both entrances had this same barrier. The presence of steps at both entry points created insurmountable obstacles for her motorized wheelchair,

as she lacked the physical ability to navigate the level changes independently due to her spinal muscular atrophy type 2 and her complete dependence on her wheelchair for mobility. Given her neuromuscular condition and the progressive weakness in her skeletal musculature, she could not overcome the step barriers through any physical maneuver or adjustment of her wheelchair position. This design deficiency at both entrances effectively prevented her from entering the establishment independently and with dignity, forcing her to require assistance from third parties to access what should be a publicly accessible business. The dual barrier configuration meant that she had no alternative accessible route to enter the restaurant autonomously, fundamentally compromising her right to equal access and creating an immediate dependency that undermined her autonomy from the very moment of attempting to enter the establishment.

10.2. Inaccessible Eating Counter Height (Alcoholic Beverages Bar Area): When Mrs. Rayza visited the establishment, she encountered the white bar counter located in the alcoholic beverages bar area, which also serves as an eating surface, and which exceeded the maximum accessible height of 34 inches required for dining surfaces according to accessibility standards. During her direct experience with this barrier, she could not position herself comfortably to use the counter for eating due to the excessive height. Given her dependence on a motorized wheelchair due to her spinal muscular atrophy type 2, which has progressively weakened her skeletal musculature and eliminated her ability to stand or adjust her height, the elevated surface forced her to adopt an extremely uncomfortable and difficult position where she had to strain significantly to attempt to reach her

food and beverages, severely compromising her dining experience, autonomy, and dignity. This barrier effectively excluded her from being able to properly use what appeared to be a popular dining area within the alcoholic beverages bar section of the restaurant, severely limiting her seating options and creating an unequal experience compared to other customers.

10.3.    Concrete Block Obstruction and Insufficient Clearance Depth Under Counter (Alcoholic Beverages Bar Area): When Mrs. Rayza visited the establishment, she directly experienced the difficulties with the same white counter located in the alcoholic beverages bar area, which featured an elongated concrete block at its base that completely prevented the essential frontal approach required both for wheelchair accessibility and for proper use of an eating surface. As a direct consequence of this obstruction, the counter lacked adequate depth clearance underneath to accommodate knees and legs during the frontal approach necessary for eating. During her visit, this structural element created a physical barrier that prevented her from positioning herself frontally at the counter, which is the natural and necessary position for eating, since no one eats sideways. Given her complete dependence on her wheelchair for mobility and her inability to transfer independently due to her neuromuscular condition, she could not overcome the concrete obstruction to properly access the counter. Due to her spinal muscular atrophy and the resulting muscle weakness and atrophy, she could not adjust the position of her legs or compress her body to compensate for inadequate clearance spaces. This design deficiency in the alcoholic beverages bar area prevented her from using the counter as an eating surface independently and with dignity,

creating a sense of exclusion while she observed other customers easily approach frontally and use the counter with ease, reinforcing her dependence on others and severely affecting her ability to participate equally in the dining experience.

10.4.    High Black Chairs Blocking Counter Access (Alcoholic Beverages Bar Area): When Mrs. Rayza visited the establishment, she observed and faced a row of high black chairs positioned directly in front of the same white bar counter located in the alcoholic beverages bar area, which created an additional physical barrier that aggravated her inability to access the counter as an eating surface. These chairs, designed for customers without mobility devices, were positioned in a way that completely blocked any attempt at frontal approach to the counter, which was already inaccessible due to excessive height and concrete obstruction. During her presence at the establishment, these chairs prevented her from even attempting to maneuver her motorized wheelchair toward the counter. Given the progressive nature of her neuromuscular condition and her complete dependence on her wheelchair for mobility, she lacked the physical capacity to move the chairs herself. The presence of these chairs in the alcoholic beverages bar area would have forced her to need help from third parties to remove them before she could even face the other barriers of the counter, creating multiple layers of dependence and obstacles to access a surface that was already inaccessible. This compound barrier transformed what should have been an independent dining experience into a series of insurmountable obstacles that completely undermined her autonomy and dignity.

10.5.   Inaccessible Restroom Signage: When Mrs. Rayza visited the establishment, she encountered the men's and women's restrooms that lacked accessible signage compliant with ADA standards, including proper contrast, raised characters, and Braille identification. When needing to use these facilities during her visit, this barrier created immediate confusion and disorientation when trying to locate the restroom facilities. Due to her neuromuscular condition and her position in a motorized wheelchair, she has limited visual angles and could not easily examine signage that might have been placed in locations inaccessible to wheelchair users. This experience transformed a basic necessity into a source of anxiety, embarrassment, and unwanted dependence, violating her right to independently access fundamental services within the establishment.

10.6.   Inaccessible Table Bases: When Mrs. Rayza visited the establishment, she found that the restaurant's tables featured base designs with central pedestals, cross-beams, or other structural elements that made them inaccessible to wheelchair users by preventing proper approach and necessary leg clearance. When attempting to use these tables during her visit, the bases created physical obstructions that prevented her from positioning her motorized wheelchair close enough to use the tables comfortably for dining. Given her spinal muscular atrophy and the resulting inability to adjust her seating position or transfer to alternative seating, she was completely dependent on finding tables that could accommodate her wheelchair's dimensions and her need for proper leg clearance. The inaccessible table design forced her to struggle with inadequate positioning, maintaining an uncomfortable distance from her food, or attempting to use tables

where her wheelchair did not fit properly. This experience significantly limited her dining options within the restaurant and created an unequal and frustrating experience compared to other customers who could freely choose and comfortably use any available table.

11. To eliminate the barriers that currently prevent Rayza Martinez Pomales from independently and safely accessing Bambina, specific modifications must be made: First, both entrance doors must be retrofitted with permanent ramps that comply with ADA slope requirements, along with proper handrails and landing areas to eliminate the step barriers that currently prevent wheelchair access. Second, the white bar counter must be lowered to meet accessible dining surface standards, while simultaneously removing the concrete block obstruction at its base and ensuring adequate knee clearance depth to allow proper frontal approach for wheelchair users. Third, the high black chairs positioned in front of the counter must be permanently relocated or replaced with accessible seating arrangements that do not obstruct wheelchair approach to the dining counter. Fourth, all restroom facilities must be equipped with compliant accessible signage featuring proper contrast ratios, raised characters, and Braille identification positioned at appropriate heights and locations for wheelchair users. Fifth, the restaurant's tables must be replaced with accessible designs that provide proper knee and toe clearance underneath, eliminating central pedestals and cross-beams that prevent wheelchair approach, while ensuring adequate space between tables for wheelchair maneuvering. These modifications would create a fully accessible environment that allows Mrs. Martinez to enter, navigate, dine, and use facilities independently, restoring her equal right to enjoy the establishment's services with dignity and autonomy.

12. Rayza Martinez Pomales will be affected in the future by the barriers that exist at Bambina, as she has concrete plans to visit the establishment within the next 5 months, motivated by the desire to enjoy its offerings and participate in the social environment it represents. Her interest is legitimate and ongoing, but the current conditions force her to postpone such visit for reasons of safety and dignity.

13. Rayza Martinez Pomales feels deterred from visiting Bambina due to the architectural barriers existing therein. However, she intends to return to this establishment once such barriers are removed. Only when all barriers related to her type of disability are eliminated will she be able to return and have full, equal, dignified, and safe access.

14. Rayza Martinez Pomales reserves the right to return at any time to Bambina for any lawful purpose, even if that means being subjected to discriminatory conditions, experiencing inconveniences that nondisabled individuals do not face, or being exposed to risks to her personal safety and physical integrity.

15. Since the construction and alteration history of the property where Bambina is located is unknown at this time, it is alleged as follows: the property was built and/or altered after March 15, 2012; in the alternative, the property was built or altered after January 26, 1993; in the alternative, the property was built prior to January 26, 1993, but the defendant has the financial resources to bring the property into compliance with the most current construction codes.

**D. Violations of Title III of the Americans with Disabilities Act (ADA) by Avro Corp.**

16. Rayza Martinez Pomales is a person with a disability protected under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq., due to her diagnosis of Spinal Muscular Atrophy Type 2, a progressive neuromuscular condition that severely affects her physical functioning, mobility capacity, and overall quality of life, and which has resulted in

her complete dependence on a motorized wheelchair for mobility and her inability to stand, walk, or move independently without technological assistance.

17. The defendant, Avro Corp., is responsible for the place of public accommodation known as Bambina, which is open to the general public and therefore subject to the provisions of Title III of the ADA.

18. This legislation imposes a clear and enforceable obligation to remove architectural barriers where it is readily achievable and to ensure that the goods, services, facilities, and advantages of the establishment are made available on equal, safe, and dignified terms to individuals with disabilities.

19. Despite this legal obligation, the defendant operates an establishment that contains multiple architectural barriers which significantly impede or restrict access, mobility, and the functional use of the space by Rayza Martinez Pomales. These barriers are neither incidental nor minor, but rather constitute physical obstacles incompatible with the fundamental principles of the ADA and the accessibility guidelines promulgated under its authority.

20. These barriers not only fail to comply with the technical requirements established by the Department of Justice under 28 C.F.R. Part 36, but also have a practical discriminatory effect, as they exclude Rayza Martinez Pomales from participating on equal terms in the public experience offered by Bambina. The lack of compliance with minimum accessibility standards renders the establishment both physically and symbolically exclusionary, preventing individuals with disabilities from exercising their right to social integration and from enjoying common services as any other citizen.

21. Rayza Martinez Pomales has direct and specific knowledge of these barriers, which have deterred her visit on multiple occasions, despite her legitimate and ongoing interest in

participating in the dining experience, social atmosphere, and gastronomic offerings provided by Bambina, including enjoying creative appetizers, recognized pizzas, quality cocktails, and the modern dining environment that the establishment promotes as "#1 in Puerto Rico and number 41 in Latin America." These restrictions not only create discomfort or inconvenience, but also constitute a tangible deprivation of rights protected by federal law, deepening her marginalization and exposing her to risk, dependency, and exclusion.

22. The defendant has had the opportunity to remedy these barriers, but has chosen to maintain the establishment in conditions that clearly violate the mandate of Title III of the ADA. This inaction represents a continuing and sustained violation that not only infringes upon the individual rights of Rayza Martinez Pomales, but also perpetuates a model of structural exclusion incompatible with the national public policy on accessibility.

23. By maintaining these conditions, the defendant engages in substantial violations of Title III of the ADA, which must be corrected through the imposition of appropriate judicial remedies, including injunctions, structural modifications, and procedural sanctions, in order to restore full, dignified, and equal access to the establishment.

**E.  Rayza Martinez Pomales has standing to bring this action**

24. Title III of the ADA provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a).

25. In the case of Rayza Martinez Pomales, standing under Title III of the ADA is based both on the discriminatory experience suffered during her visit to the establishment and on the present deterrence she experiences with respect to returning. Congress expressly recognized in 42 U.S.C. § 12188(a)(1) that a person with a disability should not be required to subject herself

repeatedly to discriminatory conditions once she has actual notice that the establishment fails to comply with the accessibility requirements imposed by law.

26. Standing under Title III of the Americans with Disabilities Act does not require that a person with a disability physically expose himself or herself to known architectural barriers in order to demonstrate constitutional injury. This doctrine, known as "deterrence-based standing," recognizes that the mere frustration of being unable to access public places on equal terms, combined with a genuine intent to visit once the barriers are removed, constitutes an actual and imminent injury sufficient to satisfy the requirements of Article III of the Constitution.

27. For purposes of standing, it must be noted that in Betancourt v. Ingram Park Mall, L.P., 735 F. Supp. 2d 587 (W.D. Tex. 2010), the Court of Appeals for the Eleventh Circuit held that the risk of suffering an injury is not speculative so long as the discriminatory barriers remain in place, the individual continues to be disabled, and is "able and willing" to visit the facility once it is brought into compliance. Moreover, any disabled individual who alleges being denied the opportunity to visit, or who is presently deterred from visiting, a public accommodation that is in violation of Title III of the ADA, asserts a present injury sufficient to obtain prospective relief—which is precisely the remedy available under Title III of the ADA. This dual aspect of particularized harm in ADA cases recognizes both the immediate impact of direct discrimination and the long-term, more insidious impact of systemic barriers. In doing so, it reflects Congress's intent to provide a comprehensive and effective remedy for discrimination against individuals with disabilities.

28. The very fact that Rayza Martinez Pomales cannot enter Bambina constitutes clear injury, as she suffers emotional distress and is deprived of enjoying an experience available to those without disabilities.

29.   Furthermore, the "deterrent effect" doctrine has been widely recognized by federal courts, including the First Circuit. As the court stated in Disabled Americans for Equal Access, Inc. v. Ferries del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005): "A disabled individual who is currently deterred from patronizing a public accommodation due to the defendant's failure to comply with the ADA, and who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'actual or imminent' harm sufficient to confer standing."

30.   This interpretation is fully consistent with the remedial purpose of the ADA. To require a person with a disability to repeatedly endure the humiliation, frustration, and physical danger of visiting an establishment that he or she knows from direct experience is not accessible would run counter to the principle of human dignity that federal law seeks to safeguard.

**F.   Rayza Martinez Pomales has suffered a concrete injury**

31.   Rayza Martinez Pomales has suffered a concrete and particularized constitutional injury that goes beyond any mere technical violation of a statute. As the First Circuit held in Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005): "[a] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA and who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA suffers actual or imminent harm sufficient to confer standing."

32.   In the present case, Rayza Martinez Pomales is not an "uninjured plaintiff" merely seeking abstract compliance with the law. On the contrary, she has experienced the following concrete and particularized injuries:

32.1.   Since January 2025, Rayza Martinez Pomales has been deterred from visiting Bambina due to her specific knowledge of multiple architectural barriers that

prevent safe and dignified access. This deterrence is not hypothetical but represents a present and ongoing restriction of her rights.

32.2.    Knowledge of these barriers has caused Rayza Martinez Pomales to experience genuine feelings of frustration, humiliation, and social exclusion. These expressive harms are recognized by case law as concrete injuries that affect the inherent dignity of individuals with disabilities.

32.3.    Rayza Martinez Pomales is prevented from participating in the experience offered by Bambina, such as enjoying its modern atmosphere, high-quality cocktails, and signature pizzas like the Passione Picante, Carnal, and Bimba Picante, depriving her of opportunities for community integration that are available to nondisabled individuals.

33.    Rayza Martinez Pomales satisfies the "injury in fact" requirement established in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992), because she has suffered:

33.1.    An invasion of a legally protected interest, namely her right under the ADA to equal access to places of public accommodation, which is being violated by the barriers at Bambina.

33.2.    A concrete and particularized injury, insofar as Rayza Martinez Pomales is deterred from visiting Bambina, affecting her "in a personal and individual way," thereby distinguishing it from a generalized grievance.

33.3.    An actual and not conjectural injury, given that her present knowledge of the barriers and the resulting deterrence constitute an injury that occurs de facto in the present.

34.   There is a direct causal connection between the architectural barriers maintained by Bambina and the harm suffered by Rayza Martinez Pomales. As the Eighth Circuit stated in Kirchner v. ALBANIA, LLC, No. 4:24-CV-206 HEA (E.D. Mo. Jan. 15, 2025), the plaintiff's proximity to the establishment and her history of interest in visiting similar establishments establish a sufficient causal connection.

35.   Rayza Martinez Pomales is not an "uninjured plaintiff" merely seeking technical compliance with a statute. She is a person with a disability who has suffered a concrete, actual, and immediate constitutional injury as a result of her knowledge of architectural barriers that prevent safe and dignified access to Bambina, combined with her genuine desire and specific intent to visit the establishment once such barriers are removed.

36.   Her case satisfies all of the elements required for standing under Article III: (1) She has suffered a concrete invasion of her legally protected interest under the ADA; (2) There is a direct causal connection between the barriers maintained by the defendant and her injury; and (3) The judicial remedies sought would fully redress her injury.

37.   The doctrine of "deterrence-based standing" recognizes that forcing individuals with disabilities to expose themselves to known barriers in order to establish standing would frustrate the fundamental objectives of the ADA to eliminate discrimination and integrate individuals with disabilities into economic and social life. Rayza Martinez Pomales should not be required to risk her safety and dignity in order to vindicate rights guaranteed by federal law.

38.   Therefore, Rayza Martinez Pomales has full standing to seek the remedies under Title III of the ADA that she requests in this action.

###   G.  The "Futile Gesture" Doctrine and Its Application

39.   The ADA expressly incorporates the principle of the "futile gesture" in 42 U.S.C. § 12188(a)(1), providing that: "[n]othing in this section shall require a person with a disability to

engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

40.    As the Ninth Circuit explained in Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1136–37 (9th Cir. 2002), "once a plaintiff has ... become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." The court emphasized that this doctrine has its roots in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 366 (1977), where the Supreme Court held that a person need not subject himself to the certainty of discrimination or engage in a futile gesture to be a victim of unlawful discrimination.

41.    Requiring Rayza Martinez Pomales to attempt to enter Bambina knowing that the architectural barriers compromise her safety and dignity would constitute precisely the type of "futile gesture" that the law rejects. Her specific knowledge of the barriers, such as the step-level entrance without an accessible ramp, provides her with actual notice of noncompliance, thereby satisfying the requirements to invoke this protective doctrine.

### H.  Distinction from Tester Cases Without Concrete Injury

42.    Unlike cases where courts have found a lack of standing, Rayza Martinez Pomales possesses characteristics that clearly distinguish her from a professional "tester":

    42.1.    She resides just four minutes by car from Bambina, establishing a close and direct connection to the establishment.

    42.2.    She has a legitimate interest in the restaurant, motivated by its modern atmosphere, high-quality cocktails, and signature pizzas.

    42.3.    She has specific and genuine plans to return to Bambina within the next five months once the architectural barriers are removed.

43.  The First Circuit has consistently recognized that standing does not require prior visits where there is knowledge of barriers and a genuine intent to patronize. In LaBonte v. Riverside Park Enterprises, Inc., No. 3:22-cv-30046-KAR (D. Mass. Jan. 7, 2025), the court explained that: "Plaintiffs were not required to engage in the futile gesture of purchasing a probably expensive manual mobility aid that A.V. had no other use for and that Six Flags had no intention of allowing him to use in its water attractions to establish standing."

44.  Similarly, in Disabled Americans for Equal Access, the First Circuit upheld standing where the plaintiff "visited [defendant's] vessel on several occasions in 2001, 2002[,] and 2003" and alleged that he "intends to return to the Defendant's place of public accommodation and cruise vessel to avail himself of the goods and services offered therein." 405 F.3d at 64.

45.  Following this precedent, the First Circuit recognized standing based on past visits and an intent to return, holding that "a real and immediate threat" of discrimination is sufficient to confer standing. 405 F.3d at 64. Recent and persuasive decision in LaBonte: In this recent 2025 decision, the District of Massachusetts, taking into account the reasoning of various circuits and the Supreme Court, explained in detail why the "futile gesture" doctrine allows standing without physical exposure to the barriers, noting that: "Section 12188(a)(1) thus 'negates any requirement that a disabled person engage in a futile gesture to establish the existence of a discriminatory policy or practice' for purposes of bringing suit under Title III."

### III.    REQUESTED RELIEF

1.  Pursuant to 42 U.S.C. § 12188(a)(2), Plaintiff respectfully requests a permanent injunction ordering Avro Corp. to:

    1.1.    Develop and Submit a Barrier Removal Plan: Within thirty (30) days, submit to the Court a detailed plan of barrier removal consistent with the 2010 ADA

Standards for Accessible Design, showing how each modification will redress the harms suffered by Plaintiff and allow her safe and dignified return.

1.2.    Execute Barrier Removal: Within one hundred eighty (180) days, execute said plan, including but not limited to:

1.2.1.    Retrofitting both entrance doors with permanent ADA-compliant ramps, including proper slope, landings, and handrails, thereby eliminating the step barriers that currently prevent independent entry.

1.2.2.    Lowering the white bar counter to a maximum height of 34 inches, removing the concrete block obstruction at its base, and ensuring adequate knee and toe clearance for frontal wheelchair approach.

1.2.3.    Permanently relocating or replacing the high black chairs positioned in front of the bar counter so as not to obstruct wheelchair access.

1.2.4.    Equipping all restroom facilities with ADA-compliant signage, including proper color contrast, raised characters, and Braille identification positioned at accessible heights.

1.2.5.    Replacing or modifying tables to provide adequate knee clearance and unobstructed frontal approach, eliminating central pedestals or cross-beam structures that impede wheelchair access.

1.2.6.    Ensuring sufficient maneuvering space throughout the restaurant for wheelchair users, including aisles and circulation areas.

1.3.    Structural Orders for Policies and Practices:

1.3.1.    Adopt and publish an equal access policy prohibiting practices that deter or exclude persons with mobility impairments.

      1.3.2.    Train all staff, within sixty (60) days, on proper interaction with customers using mobility aids and on rights guaranteed under Title III of the ADA, maintaining attendance records for five (5) years.

      1.3.3.    Designate an internal Accessibility Coordinator responsible for receiving and resolving accessibility complaints, required to submit semiannual reports to the Court for a period of two (2) years.

2. Declaratory Judgment: That the conditions described constitute violations of Title III of the ADA and that barrier removal is necessary to remedy Plaintiff's injuries of frustration, exclusion, and deterrence.

3. Judicial Oversight: Retain jurisdiction to:

      3.1.    Review Defendant's quarterly progress reports.

      3.2.    Conduct site inspections if necessary.

      3.3.    Impose civil or coercive sanctions for each day of noncompliance after the deadlines.

4. Attorneys' Fees and Costs: Award reasonable attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205, given the necessity of this litigation to enforce equal access rights.

5. Other Relief: Grant any other legal or equitable relief deemed just and proper to ensure the complete elimination of barriers and the full, equal, and safe enjoyment of the establishment by Plaintiff and the disability community.

**RESPECTFULLY SUBMITTED.**

**Dated:** October 10, 2025

**VELEZ LAW GROUP LLC**
Civil Rights Division


s/José Carlos Vélez Colón
José Carlos Vélez Colón
USDC-PR 231014

1449 S Michigan Ave, STE 13234
Chicago, IL 60605

E:     vlg@velezlawgroup.com
T:     (787)-422-1881

**ATTORNEY FOR PLAINTIFF**