**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RAYZA MARTINEZ POMALES,<br><br>     **Plaintiff,**<br><br>          v.<br><br>AVRO CORP.,<br><br>     **Defendant.** | **CIVIL NO. 25-1547 (RAM)** |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Avro Corp. ("Defendant" or "Avro")'s *Motion to Dismiss* ("*Motion*") and Plaintiff Rayza Martinez Pomales ("Plaintiff" or "Martinez")'s opposition thereto. (Docket Nos. 6, 8). Having considered the parties' submissions, the Court **DENIES** the *Motion*.

Instead, the Court orders a joint inspection capable of determining whether the asserted architectural barriers persist. The parties shall comply with the joint inspection and supplemental briefing schedule set forth below.

## I.    PROCEDURAL BACKGROUND

On October 10, 2025, Plaintiff filed a *Complaint* against Avro under Title III of the Americans with Disabilities Act ("ADA"). (Docket No. 1). Her grievances center around a handful of asserted architectural barriers at Bambina (the "pizzeria"), a restaurant operated by Avro in Caguas. <u>Id.</u> at 3. She avers that she

encountered: (1) an allegedly noncompliant entrance with steps and no ramp; (2) various alleged obstructions and insufficient clearances at the bar and dining counters; (3) allegedly noncompliant signage for inaccessible restrooms; and (4) allegedly inaccessible restaurant table designs that inhibit wheelchair access. Id. at 4-9. Plaintiff seeks injunctive relief and a declaratory judgment requiring the removal of the barriers, Avro's adoption of accessibility policies, the prompt training of pizzeria staff, and the institution of formal judicial oversight to review quarterly progress reports and conduct site inspections. Id. at 19-20.

On January 20, 2026, Avro filed the instant *Motion to Dismiss* ("*Motion*"). (Docket No. 6). Avro advances two main arguments: (1) that Plaintiff lacks standing because she allegedly failed to plead a concrete injury and was able to enjoy the restaurant on various occasions in the company of family and friends, and (2) that Plaintiff fails to state an ADA claim on account of the pizzeria's status as a pre-1992 existing facility, its location in Caguas' historic district, and because Avro leases rather than owns the building. Id. at 4-9.

On January 29, 2026, Plaintiff filed her *Opposition*. (Docket No. 8). She argues that "[d]ecades of precedent recogniz[es] that the ADA protects equal access, not merely eventual access." Id. at 2. Plaintiff contends that the ultimate completion of a transaction

does not obviate her claim and that she retains standing because she personally encountered the barriers, has been deterred from visiting again, and intends to return after the barriers are remedied. Id. at 3-6. Lastly, Plaintiff asserts that Avro's arguments centered around the building's historic location, status as a pre-1992 existing facility, and lease do not grant it immunity from the ADA. Id. at 7-8. At most, she avers, these statuses would result in a different, more lenient ADA standard applying--not the exemption of the building from the ADA altogether. Id. at 7.

## II.  APPLICABLE LAW

### A. Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

When ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012) (internal citations omitted). Then, the Court takes "the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for

relief." Id. (internal citations omitted). One of the grounds allowing a complaint to be dismissed under Fed. R. Civ. P. 12(b)(6) is for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts may consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz, 669 F.3d at 55-56 (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

## B. Title III of the ADA

Title III of the ADA prohibits discrimination in places of "public accommodation." 42 U.S.C. § 12182. Under this provision, a plaintiff must show first, that he "comes within the protections of the ADA as a person with a disability," and second, "that the defendant's establishment is...a place of public accommodation." Dudley v. Hannaford Bros. Co., 333 F.3d 299, 307 (1st Cir. 2003) (citing 42 U.S.C. §§ 12102(2) and 12181(7)).

## C. Standing

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021). To establish Article III standing, a plaintiff must have: (1) suffered an injury-in-fact; (2) that is fairly traceable to defendant's challenged actions;

and (3) that is likely redressable by a favorable decision. *See* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The Supreme Court has defined an "injury-in-fact" as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. (citations and quotations omitted). For an injury to be concrete, "it must actually exist." Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016). The causation between a defendant's conduct and plaintiff's injury-in-fact cannot be too attenuated, too speculative, or the result of some third party not before the court. Allen v. Wright, 468 U.S. 737, 757-58 (1984) (deeming plaintiffs not to have standing where their injuries "result[ed] from the independent action of some third party not before the court" and concluding that the "line of causation" was "attenuated at best") (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42 (1976)); Lujan, 504 U.S. at 560 (requiring "a causal connection between the injury and the conduct complained of"); Katz v. Pershing, LLC, 672 F.3d 64, 71-72 (1st Cir. 2012) (requiring demonstration of a "sufficiently direct causal connection between the challenged action and the identified harm" caused by defendants, not a third party); Donahue v. City of Boston, 304 F.3d 110, 115 (1st Cir. 2002) (causal connection "cannot be overly attenuated").

In injunctive relief-seeking ADA cases, the First Circuit has "required plaintiffs to show a real and immediate threat that a particular (illegal) barrier will cause future harm." Dudley, 333 F.3d at 305. Moreover, a "disabled individual who is currently deterred from patronizing a public accommodation...suffers actual or imminent harm sufficient to confer standing." Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005).

### D. **Existing facilities, historic buildings, and leased premises under the ADA**

Title III treats older facilities differently from newer ones, but it does not exempt them. For a facility existing at the time of the ADA's enactment in 1992, "a failure to remove architectural barriers...where such removal is **readily achievable**" violates the ADA. 42 U.S.C. § 12182 (emphasis added). "The term 'readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The ADA outlines numerous factors relevant to determining if a fix is readily achievable: the nature and cost of the remedy, the overall financial resources of the facility or covered business, the number of people it employs, the effect on expenses, its type of operation, and its workforce's composition, structure, and functions. Id. Even when the remedy is not readily achievable, discrimination nonetheless occurs if the entity fails

Civil No. 25-1547 (RAM)                                                    7

"to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

In this District, even when an ADA plaintiff fails to specify exactly how the removal of a barrier would be readily achievable, dismissal is improper where (1) "judicial experience and common sense" indicate that a barrier may be easily removed, or (2) the well-pled allegations as a whole raise a reasonable expectation that discovery will reveal evidence of a defendant's financial capacity to remove the barriers. *See, e.g.*, Medina-Rodriguez v. Fernandez Bakery, Inc., 255 F. Supp. 3d 334, 343 (D.P.R. 2017) ("[a]fter reviewing the alleged architectural barriers, the Court draws on its judicial experience and common sense to determine the plausibility of their removal") (internal quotation omitted); Alvarez-Vega on behalf of E.A.L. v. Cushman & Wakefield/Prop. Concepts Com., 290 F. Supp. 3d 131, 137 (D.P.R. 2017) ("the well-plead [sic] allegations in the complaint as a whole raise a reasonable expectation that discovery will reveal evidence of Defendants' financial resources and whether removing the barriers is readily achievable") (internal quotation omitted).

Similarly, historic status does not make a facility immune to the ADA. Alterations to buildings "eligible for listing in the National Register of Historic Places under the National Historic Preservation Act" or considered historic under local law "shall

comply to the maximum extent feasible with" the ADA. 28 C.F.R. § 36.405; *see also* <u>Betancourt-Colon v. Arcos Dorados Puerto Rico, LLC</u>, 2023 WL 171123, at *9 (D.P.R. 2023) (explaining that a defendant invoking historic status must still offer reasons why it might be denied the permits necessary to make the requested modifications).

Title III expressly applies to "any person who owns, **leases** (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added).

### III. DISCUSSION

Avro advances two main arguments: (1) that Martinez lacks standing because she was allegedly able to enjoy eating at the pizzeria on various occasions; and (2) that Martinez fails to state an ADA claim on account of the pizzeria's status as a pre-1992 existing facility, its location in Caguas' historic district, and because Avro leases rather than owns the building. (Docket No. 6 at 4-9).

All these arguments fail. The Court does not yet rule on whether every requested modification is readily achievable given the circumstances of Avro and the facility; nor does it settle the question of whether the purportedly historic location limits relief. At this juncture, the relevant questions are merely: (1) whether Martinez has standing, and (2) whether she plausibly alleges a Title III claim. The *Complaint* clears both thresholds.

Civil No. 25-1547 (RAM)                                                    9

### A. Martinez has standing

Avro's argument that Martinez lacks standing because she ate at the pizzeria misconstrues the discrimination standard of Title III of the ADA. 42 U.S.C. § 12182.

Title III protects "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." Id. In this Circuit, a "disabled individual who is currently deterred from patronizing a public accommodation...suffers actual or imminent harm sufficient to confer standing." Disabled Americans For Equal Access, 405 F.3d at 64. Moreover, in Dudley, the First Circuit held that since 42 U.S.C. § 12188 states that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions," the ADA "is designed to protect a disabled plaintiff from having to shoulder an undue evidentiary burden." Dudley, 333 F.3d at 304-05. Courts gauge discriminatory effect by the degree to which access is denied to a disabled individual, not solely by specific instances of denial; therefore, the existence of a Title III cause of action "does not depend upon how many attempts a plaintiff has made to overcome a discriminatory barrier, but, rather, upon whether the barrier remains in place." Id. at 305.

Civil No. 25-1547 (RAM)                                          10

Martinez has met these standards. She plausibly alleges that she is "absolutely dependent on a motorized wheelchair for mobility" on account of her degenerative spinal muscular atrophy. (Docket No. 1 at 1-2). She lives just a four-minute drive from the pizzeria. Id. at 3. She states that she visited the pizzeria and "was deterred from returning" because of the many barriers she allegedly encountered as a wheelchair user. Id. at 4. Specifically, Martinez recounts that she was only able to enter because staff present at the time helped her surmount the stairs. (Docket No. 8 at 2-3). Once inside, she continued to encounter barriers such as high countertops and tables, concrete obstructions, chairs blocking counter access, and noncompliant restrooms. Id. These allegations are concrete and particularized because they arise from Martinez's own experience at the pizzeria.

Avro does not meaningfully contradict the existence of these barriers, resting instead on the fact that workarounds allowed Martinez to eat at the pizzeria at the time. (Docket No. 6 at 5-6). This rebuttal fails the standard articulated by the First Circuit in Disabled Americans For Equal Access, which makes clear that a disabled individual has standing if they are "currently deterred" from patronizing a public accommodation and are threatened with the harm of discrimination in the future because of ongoing noncompliance with the ADA. 405 F.3d at 64. Martinez has plausibly alleged that, wheelchair-bound and forced to rely on

ad hoc staff assistance for entry into the pizzeria and navigation once inside, she has **not** received equal access. Ultimately obtaining food does not alter the analysis. Title III's protections would ring hollow if any public accommodation could circumvent the ADA by instructing an employee to improvise a temporary alternative to equal access.

Accordingly, Martinez has adequately pled injury-in-fact, causation traceable to the alleged architectural barriers maintained by Avro at the pizzeria, and redressability through the injunctive relief sought. She has standing.

## B. Martinez has stated an ADA claim

Avro next contends that Martinez has failed to state an ADA claim on account of the pizzeria's status as a pre-1992 existing facility, its location in Caguas' historic district, and because Avro leases the building. (Docket No. 6 at 4-9). While these claims may affect the scope of relief warranted by the law, they do not render relief unavailable. Therefore, dismissal is improper on these grounds.

First, Avro's appeals to its status as a lessee and the pizzeria's historic location are easily dismissed. Title III expressly applies to "any person who owns, **leases** (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). The statute is phrased disjunctively. While Avro's lease terms may affect the compliance mechanics or the

allocation of responsibility between landlord and tenant, they do not eliminate Avro's obligation to Martinez under federal law.

Similarly, while historic status might eventually allow the pizzeria facility to limit its compliance to just "the maximum extent feasible," it does not have much relevance at the Fed. R. Civ. P. 12(b)(6) stage on the current record. *See* 28 C.F.R. § 36.405 (alterations to buildings "eligible for listing in the National Register of Historic Places under the National Historic Preservation Act" or considered historic under local law "shall comply to the maximum extent feasible with" the ADA); *see also* Betancourt-Colon, 2023 WL 171123, at *9 (explaining that a defendant invoking historic status must offer reasons why it might be denied the permits necessary to make the requested modifications). Avro's appeals to the historic nature of the property simply mention that board approval might be required for certain alterations; they do not rise to the level of demonstrating that the requested relief is not "feasible" at all. (Docket No. 6 at 2, 8); Betancourt-Colon, 2023 WL 171123, at *9. This is all the more true given that several alleged barriers involve furniture, signage, counter access, or operational arrangements rather than permanent changes to the façade or historic character of the building.

Second, the pizzeria's alleged status as an existing facility also does not save Avro. While Title III treats older facilities

differently from newer ones, it does not exempt them. For a facility that existed at the time of the ADA's enactment in 1992, "a failure to remove architectural barriers...where such removal is **readily achievable**" violates the ADA. 42 U.S.C. § 12182 (emphasis added). "The term 'readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The factors determining achievability include elements like the cost of the remedy and Avro's financial resources, which are determinable only through further discovery. And even when the remedy is not readily achievable, discrimination nonetheless occurs if Avro fails "to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

Once more, given that several alleged barriers involve furniture, signage, counter access, or operational modifications rather than costly physical ones, Avro has not demonstrated that Martinez's requested remedies are not readily achievable. The Court, exercising its "judicial experience and common sense," and taking note that discovery may well reveal evidence of Avro's financial capacity to make many of the aforementioned alterations, concludes that Avro's allegation that the pizzeria facility was constructed before 1992 does not warrant dismissal at the pleading stage. Medina-Rodriguez, 255 F. Supp. 3d at 343 ("[a]fter reviewing

the alleged architectural barriers, the Court draws on its judicial experience and common sense to determine the plausibility of their removal") (internal quotation omitted); Alvarez-Vega, 290 F. Supp. 3d at 137 ("the well-plead [sic] allegations in the complaint as a whole raise a reasonable expectation that discovery will reveal evidence of Defendants' financial resources and whether removing the barriers is readily achievable") (internal quotation omitted).

### C. A joint inspection is necessary

While dismissal is unwarranted, the case cannot progress efficiently without a factual record substantiating Plaintiff's counsel's averments about the current condition of the pizzeria.

Following the sensible practice of other Districts, the Court will require a joint inspection of the pizzeria before the case progresses further. *See, e.g.,* Garcia v. Maciel, 2021 WL 4943063, at *1 (N.D. Cal. 2021); Johnson v. Montpelier One LLC, 2020 WL 3504458, at *2 (N.D. Cal. 2020); Myers v. Myers Printing, Inc., 2012 WL 1532431, at *1-2 (M.D. Fla. 2012). As the dispute concerns four discernible categories of barriers, the joint inspection should focus in particular on: (1) the allegedly noncompliant entrance with steps and no ramp; (2) various alleged obstructions and insufficient clearances at bar and dining counters; (3) allegedly noncompliant signage for inaccessible restrooms; and (4) allegedly inaccessible restaurant table designs inhibiting wheelchair access. (Docket No. 1 at 4-9). A targeted inspection of

these features of the pizzeria is the most effective means of developing a record capable of further adjudication.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's *Motion* at Docket No. 6 is **DENIED.**

The parties shall comply with the following joint inspection and supplemental briefing schedule. By **May 29, 2026,** counsel for both parties shall meet at the pizzeria to conduct a joint inspection considering the barriers outlined above and examining whether remediation is readily achievable. The parties are encouraged to engage expert assistance but are not required to do so. If the parties choose to engage expert assistance, they may confer and agree upon an expert to conduct the inspection, or each bring an expert of their own. Defendant shall be permitted to undertake requested corrective action during the inspection if it is easily achievable. Within **twenty-one days** after the inspection, Defendant may file a summary judgment motion addressing whether Plaintiff's claims are borne out by the joint inspection. Within **twenty-one days** of Defendant's motion, Plaintiff may file an opposition and cross-move for summary judgment if warranted. Defendant may file a reply within **seven days** of Plaintiff's opposition. Lastly, Plaintiff may file a surreply within **seven days** of Defendant's reply.

Civil No. 25-1547 (RAM)                                                16

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of April 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge